# EXHIBIT H

# UNITED STATES DISTRICT COURT

for the

District of Vermont

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 APR -9 PM 2:51

CLERK

BY EH
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

3585 Darling Hill Road, East Burke, VT 05832

Case No. 2:18-mj-34

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Vermont _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution and possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute, controlled substances. |
| 18 U.S.C. §§ 1956, 1957 | Money laundering. |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jamie West, SA, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/09/2018

City and state: Burlington, Vermont

*Judge's signature*

Hon. John M. Conroy, U.S. Magistrate Judge
*Printed name and title*

00000247

## ATTACHMENT A

**Premises to be Searched – Subject Premises**

The premises to be searched are described as follows, and include all locked and closed containers and electronic devices found therein:

- "Subject Premises" is located at 3585 Darling Hill Road East Burke, VT 05832. The Subject Premises is a single family, two story residence with a two story garage. The numbers "3585" are attached to the exterior wall of the attached garage. A red outbuilding is located to the north of the residence. A photograph of the premises is below.



An overhead view of the property is below:



## ATTACHMENT B

### Particular things to be seized

I. Any records or evidence of criminal conduct related to violations of 21 U.S.C. §§ 841 & 846, or 18 U.S.C. §§ 1956 & 1957, or attempts to violate these statutes, including:

   a. Any controlled substances, including heroin, LSD, fentanyl, cocaine, cocaine base, "bath salts," marijuana, and other controlled substances illegally possessed.

   b. Any paraphernalia, tools, or materials associated with using, distributing, or transporting controlled substances illegally possessed.

   c. Any records related to the acquisition, possession, distribution, or transportation of any controlled substances illegally possessed.

   d. Any records related to assets possessed, owned, sold, or transferred, whether they are historical, current, or related to future plans to acquire assets.

   e. United States currency related to the distribution of controlled substances.

   f. Any firearms and ammunition.

   g. All smartphones, cell phones and other electronic devices that are capable of storing data, such as text messages, messages sent via social networking sites, such as Facebook, Twitter, Instagram and others, bitcoin transaction data (including bitcoin wallets).

   h. Any electronic devices capable of storing data, such as video files, audio files, electronic records, digital photographs.

1

00000249

i. Any records or other items that show associations/connections between DJENEBA BENT, Tracy Baker, Sammy Bent, Sammy Bent, Jr., Isabella, Sepulveda Muniz, William Currier, and others involved in the above-described violations.

j. Records and information relating to the identity or location of the suspects;

II. Computers, cell phones, or storage media used as a means to commit the violations described above, including the taking or making orders for controlled substances, receiving or sending payment for such orders, and communicating about the means and methods of using the Internet to distribute controlled substances.

a. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"), this warrant authorizes the search of such device (including a forensic examination) for evidence of violations described above, as well as the following:

b. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2

c. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

d. evidence of the lack of such malicious software;

e. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

00000251

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

III. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# AFFIDAVIT

I, Jamie West, after being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) of the United States Department of Homeland Security, Immigration and Customs Enforcement; Homeland Security Investigations (HSI) currently assigned to the Office of the Resident Agent in Charge, Derby Line, Vermont and have been employed as a Special Agent since January 2002. I have participated in numerous investigations relating to the possession, distribution, and manufacturing of controlled substances and have become familiar with the manner and methods of illegal narcotic distribution. I have also participated in investigations into, among other things, criminal activity involving computers, including online drug distribution. I have had discussions with other law enforcement officers, including HSI Special Agent Jason Samuels, about how people use computers to commit crimes and the law enforcement techniques that can be utilized to investigate and disrupt such activity.

2. The information contained in this affidavit is based upon my personal observations, my training and experience, my own investigation, and the investigation of other law enforcement officers, including but not limited to, Postal Inspector Jonathan Dunham, with whom I have consulted.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for the search warrant, it does not set forth every fact that I or others have learned during the course of this investigation.

4. I submit this affidavit in support of an application for a warrant to search for evidence of distribution of controlled substances and conspiracy to distribute controlled substances,

the following property, which is described on Attachment A, hereto as The Property: The Property is located at 3585 Darling Hill Road in East Burke, VT. The Property is a two story building with an attached two car garage. The property is red with white trim. The residence is identified with the numbers 3585 attached to the exterior wall of the attached garage. There is also a large red outbuilding on the property. The request for the search warrant is for evidence relating to violations of 21 U.S.C. §§ 841, 846, distribution and possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute, controlled substances, and 18 U.S.C. 1956 and 1957, money laundering (the Subject Offenses). The items to be seized are listed in Attachment B.

5. Attached hereto as Exhibit 1 is the Affidavit in Support of a Search Warrant executed on April 3, 2018, by Postal Inspector Dunham, which I incorporate herein. It should be noted that the plastic bag containing a white residue described in paragraph 13 of Attachment A has been analyzed by the State of Vermont Forensic Laboratory which has concluded it does not contain regulated substances.

6. On April 3, 2018, I participated in the execution of the warrant issued pursuant to the application of which Exhibit 1 was a part, with the following results:

    a. At total of six parcels were searched. Five of the packages were found to contain suspected controlled substances and one contained what is believed to be homemade alcohol or moonshine. The contents of each parcel is described below.

        i. Subject Parcel #1 was found to contain a white mylar bag labeled "Dried Organic Fruit". This bag was found to contain a vacuum sealed bag which contained approximately 3.7 grams of green leafy substance that field tested positive for marijuana.

ii. Subject Parcel #2 was found to contain a white mylar plastic bag labeled "Organic Dried Fruit". This bag was found to contain a vacuum sealed bag containing approximately 1.9 grams of a thick brown substance that field tested positive for marijuana.

iii. Subject Parcel #3 was found to contain a white mylar bag labeled "Dried Organic Fruit". This bag was found to contain a vacuum sealed bag containing approximately 1.9 grams of a light colored powdery substance that based on color, texture and packaging, is suspected to be heroin.

iv. Subject Parcel #4 was found to contain two mason jars containing suspected homemade alcohol.

v. Subject Parcel #5 was found to contain a white mylar bag labeled "Dried Organic Fruit". This bag was found to contain a vacuum sealed bag containing 4.4 grams of a green leafy substance that field tested positive for marijuana.

vi. Subject Parcel #6 was found to contain a white mylar bag labeled "Dried Organic Fruit". This bag was found to contain a vacuum sealed bag containing 3.2 grams of a green leafy substance that is suspected to be marijuana.

7. I have also learned that the LSD ordered online and received by an HSI agent in New York, as described in Exhibit 1 at paragraph 17, was contained in an envelope with the "Organic dried fruit" labeling, similar to what was found in 5 of the 6 packages described

above. As mentioned in Exhibit 1, that LSD purchase was paid for using Bitcoin as payment.[1]

8. As Exhibit 1 explains in paragraph 16, the Property is also associated with a Post Office Box to which international packages had recently been addressed, and which were determined to contain heroin (per positive field test).

9. Also as Exhibit 1 suggests, and as explained below, Djeneba Bent appears to reside at the Property, and has engaged in the attempted distribution of controlled substances through the United States mail while living there. In addition to the information contained in Exhibit 1, evidence of Djeneba Bent residing at the property also includes:

---

[1] Bitcoin is a type of digital currency. Digital currency (also known as crypto-currency) is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e. currency created and regulated by a government). Digital currency is often used during illegal transactions, such as the sale of controlled substances and money laundering. Digital currency exists entirely on the Internet and is not stored in any physical form. Bitcoin payments are recorded in a public ledger on the internet called the Block Chain that is maintained by peer-to-peer verification, and is thus not maintained by a single administrator or entity. Individuals can acquire Bitcoins either by "mining" or by purchasing Bitcoins from other individuals or entities. An individual can "mine" for Bitcoins by allowing his/her computing power to verify and record the Bitcoin payments into the public ledger (Block Chain). Individuals are rewarded for this service by being given newly created Bitcoins.

An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions are typically done on a computer, including laptop computers, and also on smart phones.

Bitcoins are stored on/in digital "wallets." A digital wallet stores the access code that allows an individual to conduct Bitcoin transactions on the public ledger. To access Bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to a financial account number while the private key is like the password or PIN to access that account.

Even though the public addresses of those engaging in bitcoin transactions are recorded on the Block Chain, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity can be linked to a public address, it would be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

a. During my examination of trash from the property described in Exhibit 1 at paragraph 13, I also observed domestic mail parcels addressed to "Sam Bent P.O. Box 22 East Burke, VT 05832", "Sam Bent 3585 Darling Hill Road East Burke, VT 05832", and "The Lovely Djeneba Bent P.O. Box 22 East Burke, VT 05832-0022".

b. I also observed the RI-registered Accord which Djeneba Bent drove to deliver the mail parcels to the Littleton, NH Post Office as described in Exhibit 1 at paragraph 15, at the property on the following dates and times:

i. March 19, 2018 at approximately 4:30 pm., March 20, 2018 at approximately 1:00 p.m., March 30, 2018 at approximately 3:30 p.m., and on April 5, 2018 at approximately 5:00 a.m.

10. I know based on my training and experience, that:

a. Individuals who engage in the Subject Offenses often keep physical evidence, fruits, and instrumentalities of their crimes inside their residences, including, but not limited to, controlled substances, packaging material and packing inserts (from outgoing drug shipments and incoming cash deliveries), shipping labels (from outgoing drug shipments and incoming cash deliveries), ledgers reflecting drug transactions and funds laundered, drug and financial transaction reports, customer and supplier lists, identification documents and records confirming residency, access devices relating to drug supplies and financial accounts (such as swipe cards to medical offices and credit and debit cards), detailed financial records, and cash proceeds.

b. I have also learned through training, education, and experience that such evidence, fruits, and instrumentalities are often stored in locked containers, safes, secret

compartments, closets, drawers, above or below ceiling and floor tiles, behind false walls, and in other places intended to avoid detection by other people, including law enforcement.

c. Finally, I know that the commission of the Subject Offenses in the manner suggested by the facts contained herein requires the use of computers, smart phones, tablets, or other computer devices and storage media for the perpetrator to access dark web marketplaces and bitcoin exchanges, connect with customers, and co-conspirators, and engage in the transfers of digital currency. I have learned through training and experience that individuals who engage in the Subject Offenses in this way also commonly use such electronic devices to keep track of suppliers, customers and co-conspirators, keep records of illegal transactions and criminal proceeds, and store copies of online chats, emails, and other data. In addition, I know, based on training and experience that perpetrators maintain copies of software programs and other applications to assist with accessing the dark web and running a vendor account, including, but not limited to, Tor browser software, Bitcoin client and wallet files, digital signature software and related authentication keys, as well as encryption software and related encryption keys. In such cases, I know that perpetrators often keep such electronic devices inside their homes. In the case of smart phones, tablets, and laptop computers, perpetrators may also keep such devices on their person in, either in their pockets or in containers such as carrying bags, cases, backpacks or protective sleeves.

d. Furthermore, I have learned through training, education, and experience that computers used in furtherance of criminal activity can hold evidence of the criminal activity months (or even years) after the crime occurred. This is typically true because:

- Electronic files can be stored on a hard drive for years at little or no cost and users thus have little incentive to delete data that may be useful to consult in the future.

- Even when a user does choose to delete data, the data can often be recovered months or years later with the appropriate forensic tools. When a file is "deleted" on a home computer, the data contained in the file does not actually disappear, but instead remains on the hard drive, in "slack space," until it is overwritten by new data that cannot be stored elsewhere on the computer. Similarly, files that have been viewed on the Internet are generally downloaded into a temporary Internet directory or "cache," which is only overwritten as the "cache" fills up and is replaced with more recently viewed Internet pages. Thus, the ability to retrieve from a hard drive or other electronic storage media depends less on when the file was created or viewed than on a particular user's operating system, storage capacity, and computer habits.
- In the event that a user changes computers, the user will typically transfer files from the old computer to the new computer, so as not to lose data. In addition, users often keep backups of their data on electronic storage media such as thumb drives, flash memory cards, CD-ROMs, or portable hard drives.

11. Accordingly, and based on all of the above, I submit that there is probable cause to believe that The Property and any closed and/or locked containers found therein will contain evidence, fruits, and instrumentalities of the Subject Offenses, and will also contain Subject Devices that will (and will, in and of themselves, constitute) further evidence, fruits, and instrumentalities of the Subject Offenses, in the forms specified in Attachments A and B,

which are incorporated by reference herein.

Dated at Burlington, in the District of Vermont, this 9 day of April, 2018.

_____
Jamie West, Special Agent, Homeland Security Investigations

Subscribed to and sworn before me this 9th day of April, 2018.

_____
John M. Conroy
U.S. Magistrate Judge
District of Vermont