UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>SAM BENT, )<br>    Defendant. ) | Docket No. 5:18-cr-61 |

## **OPPOSITION TO MOTION TO SUBPOENA WITNESSES**

Defendant Sam Bent has moved the court to issue subpoenas to Vermont State Police Sergeant Sean Loan and Homeland Security Investigations Agent Fred Divigard, requiring these persons to appear at the hearing scheduled for March 21. As explained below, the motion should be denied because neither witness's testimony is necessary to the resolution of the pending *Franks* Motion to Suppress, and the subpoenas would also be oppressive. Furthermore, Bent has failed to comply with 6 C.F.R. §§ 5.41-49, the Department of Homeland Security's *Touhy* Regulations.

Rule 17 appears to contemplate an ex parte application for a subpoena, and a motion to quash once the subpoena issues. Since Bent has not submitted an ex parte application, but instead has filed a motion for subpoenas to issue, the United States opposes that motion. If the subpoenas issue, the United States could move to quash or modify "if compliance would be unreasonable or oppressive." *United*

1

*States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1113 n.51 (9th Cir. 2008). Rule 17 requires a showing of relevancy and specificity to support issuance of the subpoena. *United States v. Larson,* 2014 WL 5696204 (N.D. Cal. Nov. 4, 2014), at *2 (citing *United States v. Reed,* 726 F.2d 570, 577 (9th Cir. 1984)). As explained below, Bent cannot make this showing and his motion for issuance of subpoenas should be denied.

### The Testimony Sought

Bent seeks Sergeant Loan to testify about his administration of field tests, at the request of Homeland Security Investigations, to ascertain whether packages addressed to Sam Bent contained controlled substances.

Sam Bent also seeks to subpoena HSI Agent Fred Divigard because Divigard approved the reports of Special Agent Jamie West. Agent West is prepared to testify, if necessary.

### Bent Has Failed to Comply with the Applicable Regulations

As a threshold matter, Sam Bent has failed to comply with 6 C.F.R. §§ 5.41-5.49, the Department of Homeland Security's *Touhy* regulations, which provides the manner by which information or testimony may be sought by an agent of the Department of Homeland Security. As those regulations explain, agents are prohibited from providing information or testimony absent compliance with those regulations. *See Vermont v. Patten,* 2010 WL 11610366 (D. Vt. Feb. 4, 2010), at

*2 (party requesting information from Department of Homeland Security must comply with DHS' *Touhy* regulations). Also, because the United States is not refusing to disclose its rebuttal of the requested testimony, application of those regulations do not implicate the due process concerns articulated in *United States v. Bahamonde*, 445 F.3d 1225, 1226 (9th Cir. 2016).

**The Requested Testimony is Not Relevant.**

The testimony Bent seeks through both requested subpoenas relates to the April 3 Affidavit in support of an application to search six parcels that Sam Bent's codefendant, Djeneba Bent (who has pleaded guilty to conspiring with Sam Bent to distribute controlled substances) had mailed. A copy of that affidavit is filed herewith as Exhibit 1.

Bent's Motion to Suppress (doc. 22) argues that the affidavit should have stated that the field tests performed by Sergeant Loan were unreliable. Mot. (doc. 22), at 11. Bent also contends that the April 3 affidavit should have stated that a white powdery substance found by investigators during a search of Bent's trash, had tested negative for controlled substances. Doc. 22, at 10. A May 14 report of HSI Special Agent Jamie West stated that West had been advised of this test result on April 2, the day before Dunham authored the affidavit. Sam Bent claims that if this information had been included, then the search warrant would not have issued relating to the six parcels mailed by Djeneba Bent.

Bent seeks the testimony of Sergeant Loan to discuss the administration of the field test. Bent's seeks the testimony of Agent Divigard (who was Agent West's supervisor) because Agent Divigard approved Agent West's report. If necessary, Agent West is anticipated to testify that the information in the May 14 report (recounting the March 27 trash search) report is inaccurate insofar as the report states Agent West learned of the negative lab result on April 2; he learned of the negative lab result on April 4, 2018. Vermont Forensic Analyst Wendy Alger may also testify, if necessary, as to the timing of information flow.

The testimony Bent seeks through the subpoenas would be irrelevant because the April 3 affidavit (Exhibit 1, hereto) establishes probable cause without regard to the nature of the white powder, and without regard to the field test administered by Sergeant Loan.[1] *See United States v. Rajaratnam,* 719 F.3d 139, 146 (2d Cir. 2013) (if untainted portions of affidavit suffice to establish probable cause, motion to suppress should be denied). As a result, there is no reason to issue the requested subpoenas.

---

[1] If necessary, the United States is prepared to establish the reasonableness of Inspector Dunham's reliance on Sergeant Loan's field tests. It is also prepared, if necessary, to show that Agent West learned of the negative test results for the white powder on April 4, the day after the April 3 search warrant application.

The April 3 affidavit in support of the search warrant application (document no. 22-1, filed with the motion to suppress, and filed herewith as Exhibit 1) contained the following information:

(1) during the previous month, HSI had purchased suspect LSD from a dark web vendor in exchange for bitcoin, and the return address for that LSD-containing parcel was, *the same return address on the six parcels for which the search warrant was sought* (William Currier, 462 Railroad Street, St. Johnsbury) (Exhibit 1, at ¶¶ 6, 17);

(2) the mail carrier responsible for 462 Railroad Street had declined to deliver mail to William Currier at 462 Railroad Street because the carrier doubted anyone by that name lived there (*id.* at ¶ 18);

(3) Postal Inspector Dunham learned the person who mailed the six parcels, Djeneba Bent, had mailed multiple packages from at least six different post offices in the area (*id.* at ¶ 14);

(4) Djeneba Bent's mailings included the use of fictitious return addresses as well as return addresses of persons on the sex offender registry, in an effort to conceal the real identity of the sender of those packages (*id.* at ¶¶ 10-11, 20);

(5) Djeneba Bent was associated with PO Box 22 in East Burke, Vermont, by virtue of having had mail addressed to her at that PO Box and the

vehicle Bent drove was seen in the driveway at the 3585 Darling Hill Road residence associated with PO Box 22 (*id.* at ¶¶ 8.a, 8.c, 11, 15);

(6) an inspection of the trash from 3585 Darling Hill Road showed that it contained rubber gloves and a plastic bag containing an unknown white powder residue which had been sent to the lab for testing (*id.* ¶ 13);

(7) PO Box 22 had also recently ordered and received a large quantity of Priority Mail boxes and envelopes, a tactic often used by persons who distribute illegal drugs in the mail (*id.* ¶ 8.a);

(8) PO Box 22 had recently received two international parcels that, when searched, contained a dark thick substance in vacuum sealed bags (*id.* ¶ 16); and,

(9) Inspector Dunham knew from his training and experience that:

    a. Priority Mail is a common method for shipping unlawful controlled substances;

    b. such drugs (or proceeds) are often found during parcel investigations;

    c. drug dealers often use false, or dated, information in labeling the parcels in an effort to effort to avoid association with the unlawful shipments.

In summary, the six parcels used the same fake return address that was on the LSD-containing parcel sent earlier in the month. The six parcels were mailed by a person, Djeneba Bent, who travelled to post offices around Northeast Vermont to mail parcels bearing fake return addresses. Furthermore, Djeneba Bent was associated with PO Box 22, and PO Box 22 had ordered and received a large quantity of Priority Mail supplies, and had also recently received an international parcel containing a dark thick substance in vacuum sealed bags. An examination of the trash from residence associated with PO Box 22, 3585 Darling Hill Road, also revealed rubber gloves and a plastic bag containing a suspicious white residue. Priority Mail is used to distribute illegal drugs and drug proceeds, and that drug dealers frequently use false information on the shipments to avoid detection. It was also clear from the affidavit that Djeneba Bent's use of multiple post offices for mailing these parcels was also suggestive of an effort to cover up the nature and quantity of her shipments.

The above-recitation of facts established probable cause to conclude the six parcels contained evidence of crime without regard to the positive field test relating to the dark thick substance, and regardless of the status of the lab-testing of the white residue within the plastic bag. As a result, the arguments challenging those aspects of the April 3 affidavit should be denied without the need for an

7

evidentiary hearing as to those issues. The requested subpoenas, seeking testimony limited to those issues, would serve no purpose.

### The Requested Subpoenas Would Be Oppressive

Finally, the undersigned has been advised that Sergeant Loan is currently on medical leave, and Agent Divigard no longer works in Vermont. Requiring their attendance under these circumstances would therefore be oppressive. The motion to issue subpoenas should be denied.

Alternatively, the Court should wait until argument and presentation of evidence at the March 21 hearing (at which the government anticipates showing, if necessary, that were no inaccuracies in the April 3 affidavit) to decide whether Bent's desired witnesses should be subpoenaed.

Respectfully submitted, this 18th day of March, 2019.

        UNITED STATES OF AMERICA

        CHRISTINA NOLAN
        United States Attorney

By:   /s/ *Michael P. Drescher*
       Michael P. Drescher
       Assistant U.S. Attorney
       P.O. Box 570
       Burlington, VT 05402-0570
       (802) 951-6725
       Michael.Drescher@usdoj.gov